Filed: 2/26/2024 5:16 PM
Michael Gould
District Clerk
Collin County, Texas
By Peighton Wright Deputy
Envelope ID: 84921774

CAUSE NO._____  471-06275-2023

| | | |
|---|---|---|
| **MARK MOYLE,** | ) | |
| | ) | |
| | ) | **IN THE_____** |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **JUDICIAL DISTRICT COURT** |
| | ) | |
| **CITY OF PRINCETON, TEXAS,** | ) | |
| | ) | **COLLIN COUNTY, TEXAS** |
| **DEREK BORG, IN HIS INDIVIDUAL CAPACITY,** | ) | |
| | ) | |
| **BRIANNA CHACÓN, IN HER INDIVIDUAL CAPACITY** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |

## PLAINTIFF'S AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Plaintiff MARK MOYLE ("Plaintiff" or "Chief Moyle") and files this his Amended Petition against the City of Princeton ("Princeton"), Derek Borg ("Borg"), and Brianna Chacón ("Chacón") (collectively, "Defendants"), in support thereof would respectfully show the Court as follows:

### Introduction

Defendants have committed multiple violations of State and Federal law resulting in substantial harm to the citizens of Princeton and Police Chief, Mark Moyle. Defendants intentionally caused this harm through self-serving abuse of power, hypocrisy, years of corruption, and a complete lack of accountability. Defendant, Borg, set out to manipulate the Princeton Police Department and city employees, ensure that Chief Moyle failed in his honorable efforts to improve

the City of Princeton, and maliciously followed through to destroy the thirty-two year career of the former Princeton Chief of Police.  Mayor Chacón, Human Resources, and members of the City Council participated in many of the violations, and covered up others.

Now they have paid off Borg with a substantial severance, are concealing evidence of extensive self-dealing, continuing to violate State & Federal law, and are attempting to move forward without repercussions and without addressing the underlying corruption.  These are not the opinions of a disgruntled former employee, these are facts.  Facts confirmed by numerous current and former members of the Princeton Police Department and City Hall.  Facts supported by documentary evidence and the Defendants' own words.

## I.

### DISCOVERY CONTROL PLAN

1. Plaintiff intends that discovery in this matter should be conducted under Level 3 of the Texas Rule of Civil Procedure 190.

2. Plaintiff seeks monetary relief in excess of $250,000 but not more than $1,000,000.

## II.

### PARTIES

3. Defendant, City of Princeton, Texas, is a political subdivision in Collin County, Texas.

4. Defendant, Derek Borg, being sued in his individual capacity.  Borg is an individual resident of Princeton, Texas.

5. Defendant, Brianna Chacón, being sued in her individual capacity.  Chacón is an individual resident of Princeton, Texas.

6.   Plaintiff, Mark Moyle, is an individual who was a resident of Collin County, Texas while serving as Chief of Police with the Princeton Police Department. Plaintiff currently resides in Howard County, Texas.

## III.

### JURISDICTION AND VENUE

7.   This Court has jurisdiction over the subject matter and the parties to this case and all conditions precedent to the filing of this suit have been met or waived. Venue properly lies in Collin County, Texas.

8.   This Court has jurisdiction over this lawsuit because the amount in controversy in this dispute is within the jurisdictional limits of this Court. Defendants have availed themselves of the laws and jurisdiction of Collin County by residing and conducting business within the confines of the county.

9.   Venue is proper in Collin County, Texas because all or the substantial majority of the acts and omissions giving rise to Plaintiff's claims occurred in Collin County, Texas.

## IV.

### FACTS

10. Plaintiff, Mark Moyle is an individual with thirty-two years of experience as a professional law enforcement officer. He was most recently employed as the Chief of Police for the Princeton Police Department ("PPD") from February 2019 until November 2022.

11. Chief Moyle was hired to turn around the PPD, which was understaffed, lacked accountability, transparency, professionalism and leadership. The PPD was

understaffed and had the worst reputation of any department in Collin County at the time of Chief Moyle's hiring.

12. Chief Moyle received numerous accolades and praise from multiple law enforcement agencies, officers, the Texas Commission on Law Enforcement ("TCOLE"), and the Collin County District Attorney's Office, for his work to improve the PPD.

13. Unfortunately, Defendants deliberately sabotaged Chief Moyle and the efforts of the PPD under his leadership. Defendants intentionally engaged in extreme and outrageous conduct, and made numerous false and defamatory statements, causing severe emotional distress and reputational harm to Chief Moyle in the process.

14. Chief Moyle presented detailed staffing studies and documented support explaining the need for the PPD to improve its staffing for the safety of Princeton's citizens and the safety of Princeton's officers. Chief Moyle based this presentation and his suggestions on a collection of statistics and facts, available to the public, to advance and further develop the Princeton Police Department.

15. In 2020, Chief Moyle requested three additional Sergeant positions, not promotions, during the first budget meeting as the Chief of Police. A corresponding meeting took place, which included Borg, who called Plaintiff to Princeton City Hall and stated that he would not provide the PPD with the positions. After this meeting, Plaintiff received confirmation from PPD officers and administrators that the three Sergeant positions would in fact be provided for the PPD.

16. A few months later, Chief Moyle was told that the City did not have enough money to grant those three Sergeant positions, claiming that it was because Chief Moyle improperly asked for promotions, not positions. This is not true, as he requested

positions and successfully explained to Borg why those three Sergeant positions were required for the safety of Princeton's residents.  Afterward, Borg deliberately ignored Plaintiff's calls and emails as the Chief of Police.

17. Plaintiff received a tremendous amount of pushback from Borg when trying to start the required PPD accreditation process.

18. Even after multiple, proper requests from Chief Moyle, Borg refused to improve PPD officer and employee compensation and benefits to the market average.  As a direct result, the PPD suffered from understaffing, officer and employee turnover, and the inability to attract qualified applicants.

19. Borg also ignored Chief Moyle's proper requests to automate the front desk phone lines, improve PPD efficiency, although other Princeton departments received these improvements.

20. On numerous occasions, Borg rejected Chief Moyle's requests to increase PPD proficiencies in numerous ways, including the provision of E-ticket riders.

21. Borg committed a detective to the Collin County Child Advocacy Center ("CAC") without consulting Chief Moyle regarding the PPD's staffing.  At the time, the PPD had two detectives and one Lieutenant assigned to the Criminal Investigation Division ("CID") with well over 100 active cases. Sending a detective to the CAC meant that the PPD would only have one detective and one Lieutenant for well over 100 active cases. Borg refused to refill the position even after Plaintiff's urgent request to address PPD understaffing.

22. Borg took away part of the PPD's building, where Chief Moyle worked, the parking lot, and left the entire building completely unsecured in violation of safety regulations.

23. Borg consistently treated Plaintiff unfairly by holding Plaintiff, to different, less favorable standards than other directors regarding leave time, communication, and enforcement of human resource policies.

24. Borg, without consulting with Plaintiff, disrupted Chief Moyle's work with the Collin County Sheriff's Office.

25. On September 9th, 2020, Borg called Plaintiff an idiot in front of other agencies at the public works building.

26. Chief Moyle sent emails to Borg regarding the officer and employee pay scale, staffing study, and below-market average pay for PPD officers and employees.  Borg refused to even respond to Chief Moyle.

27. Borg failed to follow his own "Chain of Command" on numerous occasions while disparaging Chief Moyle.  The Assistant Chief of the Collin County Sheriff's Office informed Plaintiff that Borg contacted him directly, excluded Plaintiff from PPD operations, and disparaged Plaintiff regarding the CAC.

28. In 2021, Borg had security cameras installed outside of Chief Moyle's office but did not do so for any other director.

29. In June 2021, during a meeting regarding Princeton's Sex Offender Ordinance, Borg blatantly lied to Chacón regarding Chief Moyle's input on the Sex Offender Ordinance.

30. In 2021, in an exchange of emails, Borg defamed Plaintiff by falsely accusing him of not doing his job and completely failing to provide the PPD information for "next year's events."   However, Plaintiff timely and professionally completed this assignment by developing the PPD list of events and sending them directly to Princeton employee Tenishea Turner ("Turner") as directed.

31. In October 2021, Mayoral Candidate, Sprawls, made a Facebook post about bald tires on police cars.  Right after this incident, Borg directed Plaintiff to make a post on Facebook arguing against Sprawls and stating how the bald tires were the fault of the current Mayor. Turner explained to both Borg and Plaintiff that the counter-Facebook post was illegal.  When Borg responded to Turner regarding the issue, he falsely accused Chief Moyle of unilaterally attempting to implement the counter-Facebook strategy.

32. In 2022, when transferring the PPD from the old Police Department building to the new Police Department building, Borg circumvented the "Chain of Command," and did not include Chief Moyle in the meetings or conversations regarding the movement of PPD property and evidence.

33. PPD Lieutenant Rodriguez and Information Technology professionals had to inform Chief Moyle about Borg's dangerous and unethical conduct.

34. In January 2022, there was a meeting between Plaintiff, Borg, and Chacón.  Borg wrote a false and defamatory post-meeting letter that was riddled with false statements and mischaracterization regarding Chief Moyle.

35. Borg informed Chief Moyle that Defendants were putting him on administrative leave and offered him $9,000 in compensation if Plaintiff would quietly resign and sign a complete release of claims.

36. Plaintiff requested an opportunity to be heard prior to his discharge, for an opportunity to clear his name, however, Chacón and Borg denied Chief Moyle's requests.

37. Borg told Chief Moyle that if he refused to resign and go away quietly, Borg would fire the Chief of Police, ruin his 32-year career in law enforcement and destroy his

reputation with a Dishonorable Discharge.  Borg and Chacón followed through with this malicious threat.

38. Defendants discharged Chief Moyle in a manner creating a false and defamatory impression about him to the public, which stigmatized him and foreclosed him from other employment opportunities.

39. After they terminated Chief Moyle, Borg called a mandatory meeting attended by Chacón, Borg, City Council Members, PPD officers and other Princeton employees. During the meeting, Chacón and Borg further defamed Chief Moyle with numerous false accusations, intentionally dishonest statements, and personal and professional attacks against Plaintiff.

40. A few examples of the false claims made by Borg and  ón to defame Plaintiff include: (1) that Plaintiff lied to the PPD by never requesting civilian positions; (2) that Plaintiff betrayed his team by failing to request officer and staff pay increases; (3) made no efforts to fix the departmental pay scale; and (4) that the reason why the department did not get additional officers was because Plaintiff did not want to fill the open positions and made no effort to do so.

41. These statements were intentional and completely false in that Plaintiff tried tirelessly to achieve these objectives for the PPD and was prohibited by Borg, himself.

42. In February 2022, Tenishea Turner, the Director of Community Engagement, had emailed Chacón about the toxic workforce, created by Borg. Turner received an email from Borg saying that Turner did not follow the "Chain of Command" by having a meeting with the Chacón without him present.

43. Turner has the position of Director of Community Engagement with the City of Princeton and there was no need for her to prepare Borg for a meeting that she privately had with the Chacón.

44. In May 2022, Chacón directly told Plaintiff that he did not need to let Borg know of the meetings he had with Chacón. Chacón requested that Chief Moyle come to her directly because she needed to know the truth about Borg and his abuse of employees.

45. Chacón specifically stated that she was aware of the problems Borg was causing for the department, especially for Chief Moyle. Chacón asked that the conversation between the Mayor and Plaintiff remain private between Plaintiff and her, excluding Borg.

46. Chacón specifically stated that she wanted Plaintiff to talk about issues directly with her and through council, instead of going through Borg.

47. Chacón offered and asked Chief Moyle to have one-on-one discussions on issues, without Borg. Chacón stated that she understands that Borg is a "roadblock." Chacón stated that she "is his boss," referring to Borg, and she told Plaintiff that the Chief of Police needs to talk to the Mayor directly.

48. On September 5th, 2022, Memarie Lawrence, an employee of PPD, submitted a notice of resignation to Chacón. The letter explains how Lawrence was discriminated against and how Borg and Lesia Gronemeier, the Assistant City Manager, created a hostile work environment, bullied employees and were very unprofessional. Lawrence explained how Chief Moyle made numerous efforts to improve the Police Department, however, Borg completely blocked Plaintiff's efforts.

49. Lawrence also stated that Chief Moyle brought the significant problems in the PPD to Borg's attention, but Borg intentionally ignored Plaintiff in an effort to set Chief Moyle up to be the "scapegoat."

50. On September 15th, 2022, Tenishea Turner, the Director of Community Engagement, sent a letter to Chacón expressing her concerns regarding the PPD. The statement detailed how Borg had made several defamatory comments about Plaintiff to Turner, a newly hired staff member at the time. Turner also states that she noticed how Plaintiff was always singled out by Borg and was being challenged at meetings or was made the brunt of jokes in meetings.

51. Borg and Stephanie O'Brien made several false and defamatory comments about Chief Moyle in conversations with management and with Deputy Chief James Waters ("Waters").

52. On September 19th, 2022, Borg made a false claim in emails about Plaintiff to Waters, and others, regarding Plaintiff failing to follow maintenance procedures.

53. PPD Officer, Andrew Royalty ("Royalty"), submitted a letter of resignation expressing his concerns and the problems he observed with Borg and Defendants during his time with the PPD. Royalty stated that the City Manager, Derek Borg, intentionally ignored the troubles of the PPD and that requests for Borg to provide necessary help fell on "deaf ears."

54. Royalty stated that Plaintiff repeatedly brought the problems within the PPD to the attention of Borg, however, Borg intentionally refused to address the problems, and instead defamed Chief Moyle for Borg's deliberate failures. Royalty said that it was clear Borg was against Chief Moyle and the PPD under Plaintiff's leadership.

55. According to Royalty, Defendants deliberately tried to jeopardize the security and compliance of the PPD, in an effort to "scapegoat," Chief Moyle.  Royalty also stated that Borg gave preferential treatment to other departments, while intentionally taking steps to cause Chief Moyle and the PPD to fail.

56. In November 2022, Borg opened a disciplinary investigation against Plaintiff based completely on false and defamatory grounds.  At this time, Borg threatened to terminate Chief Moyle if he did not resign, sign a release of claims, and go away quietly.

57. On December 2, 2022, Defendants maliciously ended the career of Chief Moyle by Dishonorably Discharging him with a false and defamatory F-5 report.

58. On September 13, 2023, The Texas Commission on Law Enforcement issued an F-5 report requiring Defendants to correct and replace Princeton's original F-5 to reflect that Chief Moyle was Honorably Discharged.

59. On or about October 13, 2022, the City Council held a meeting at Princeton City Hall with Borg, Chacón, Councilman Steven Deffibaugh, and Waters where they met with PPD employees regarding Chief Moyle.  This meeting lasted approximately four hours where Chief Moyle was disparaged with statements falsely accusing him of not requesting raises and not pursuing the employment of civilians.

60. Before November 22, 2022, during the sham investigation of Chief Moyle, Borg attended a police association meeting where there was a vote of no confidence in Chief Moyle.  This vote did not pass.

61. As a result of his termination, Chief Moyle's pension was reduced, Chief Moyle suffered immense reputational harm, and, as a direct result, has been unable to find a new job in law enforcement, due to this reputational harm caused by Defendants.

# V.

## CAUSES OF ACTION

### Count 1: First Amendment Retaliation

62. Defendants Derek Borg and Brianna Chacón.

63. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

64. Defendants violated Chief Moyle's First Amendment Right to freedom of speech by subjecting him to adverse employment actions motivated by retaliation for making constitutionally protected statements on matters of public concern.

65. Claims against the government that are pursued under the Texas Commission on Human Rights Act (TCHRA) are not suits filed under the Texas Tort Claims Act (TTCA) because the TTCA expressly state that the remedies it authorizes are in addition to other available legal remedies and the TCHRA provides plaintiffs with a statutory remedy for unlawful discrimination.. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (2008) (quoting Tex. Civ. Prac. & Rem. Code § 101.003).

66. 42 U.S.C.S. § 1983 provides individuals whose constitutional rights are violated by state officials a statutory remedy. *See, Stotter v. Univ. of Tex. At San Antonio*, 508 F. 3d 812, 821 (5th Cir. 2007). To support a claim under § 1983, a plaintiff pleads that defendant(s), violated the Constitution through their actions. *Jones v. Hosemann*, 812 Fed. Appx. 235, 238 (5th Cir. 2020) (citing *Ascroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

67. Dismissal of government employees requires a court order premised on findings that: (1) the plaintiff brought suit under the Texas Tort Claims Act, Tex. Civ. Prac. & Rem. Code Ann. § 101; and (2) the individual defendants are employees of the governmental

unit. Because court action is required to effectuate dismissal of government employees, nothing in Tex. Civ. Prac. & Rem. Code § 101.106(e) precludes a plaintiff from amending the petition before that. Parties may amend their pleadings without leave of court seven days before trial. Tex. Dep't of Aging & Disbility Servs. v. Cannon, 453 S.W.3d 411, 416 (2015); Tex. R. Civ. P. 63.

68. Claims properly brought under §1983 in an amended petition that is acting as the operative pleading, are not to be dismissed under Texas Civ. Prac. & Rem. § 101.106(e) because § 1983 claims against individual government employees are not brought under the Torts Claims Act. *Golden v. Austin Cnty. Sheriff's Dep't*, No. H-09817, 2009 U.S. Dist. LEXIS 54770, 2009 WL 1825448, at *5 (S.D. Tex. June 26, 2009) ((holding that subsection (e) required the dismissal of tort claims against employees, but not section 1983 claims). Because §1983 is not a claim governed by the Tort Claims Act, those claims are not affected by Tex. Civ. Prac. & Rem. Code Ann. § 101.v *Te . Dep't of Aging  Disability Servs. v. Cannon*, 453 S.W.3d 411 (2015); Tex. R. Civ. P. 63.

69. The Court has consistently held and made clear that public employees do not surrender all of their rights protected by the First Amendment and that the First Amendment still protects a public employee's right to speak as a citizen or individual while addressing matters of public concern. *See, e.g., Pickering v. Bd.  f Educ.,* 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968); *Rankin v. McPherson*, 483 U.S. 378, 384, 107 S. Ct. 2891, 97 L. Ed. 2d 315 (1987);  *nited States v. National Treasury Emples.  nion*, 513 U.S. 454, 466, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995). [****14].

70. A public employee establishes a retaliation claim relating to the First Amendment, by showing that "(1) he suffered an adverse employment action; (2) his speech involved a

matter of public concern; (3) his interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) his speech motivated the employer's adverse action." *Modica v. Taylor*, 465 F.3d 174, 179-80 (5th Cir. 2006). Reprimands, accusations of misconduct, demotions, discharges, refusals to hire or promote, verbal harassment, denials of leave requests, and derogatory statements to co-workers are examples of adverse employment actions, which is defined broadly. *Pierce v. Te as Dep't of Crim. Justice Inst. Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994); *Wheat v. Florida Parish Juvenile Justice Comm'n*, 811 F.3d 702, 707 (5th Cir. 2016); *S ienbach v. hio State niv.*, 493 F. App'x 690 (6th Cir. 2012); *Aryain v. Wal-Mart Stores Te as LP*, 534 F.3d 473, 479-80 (5th Cir. 2008); *Holloway v. Dep't of Veterans Affairs*, 309 F. App'x 816, 817 (5th Cir. 2009).

71. Chief Moyle endured multiple adverse employment actions from Defendants because he engaged in constitutionally protected speech on matters of public concern. In doing so, Defendant acted under color of law and abused his position to retaliate against Plaintiff. *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 2255, 101 L.Ed.2d 40 (1988) (quoting *nited States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L. Ed. 1368 (1941)).

72. The Court has the discretion to determine whether the speech at issue is on a matter of public concern. *Salge v, Edna Indep. Sch. Dist.*, 411 F.3d 178, 184 (5th Cir. 2005). Chief Moyle's speech regarding how to better serve and protect Princeton's citizens, how to advance PPD efficiency, how to increase loyalty and confidence within the department and with the Princeton community were directly on matters of public concern. Chief Moyle was explicitly tasked with applying his decades of law

enforcement experience to improve PPD's reputation as the worst police department in Collin County before he was hired.

73. When balancing the plaintiff's interest in commenting on a matter of public concern and the employer's interest in promoting efficiency, the Court should consider whether the speech or statement at issue "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Salge v, Edna Indep. Sch. Dist.*, 411 F.3d 178, 192 (5th Cir. 2005).  The statements made by Chief Moyle were directed towards improving efficiency, promoting discipline, and enhancing working relationships through loyalty and confidence.

74. Chief Moyle's speech had a positive impact on PPD operations and the performance of the speaker's duties.  In fact, Chief Moyle's co-workers shared in and supported his statements.  Chief Moyle's right to speak on these matters of public concern benefited the PPD and substantially outweighed Defendants purported interests.

75. A First Amendment retaliation claim includes Plaintiff engaging in protected conduct that is a motivating factor for an adverse employment action against them.  *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001).  A causal link between the protected conduct and the adverse employment action can be inferred from circumstantial evidence, such as showing that the employer had knowledge of the protected activity and a temporal proximity between the activity and the retaliatory action.  *verton v. City of Arlington*, 2004 U.S. Dist. LEXIS 17194 [*18] (N.D. Tex. Aug. 27, 2004).

76.  Borg had first-hand knowledge of Chief Moyle's speech through statements made directly to Borg verbally and in writing.  Borg also learned of Chief Moyle's statements to Mayor Chacón and other PPD employees, when Chacón told Borg what Chief Moyle stated.   Borg took direct adverse action against Chief Moyle following the conversations to hinder his efforts to implement the necessary improvements for the PPD.

77. Additionally, Borg responded with hostile and derogatory statements directed at Chief Moyle, to undermine loyalty and confidence, harm close working relationships, impede Chief Moyle's ability to  perform his duties and interfere with the regular operation of the Department.

78. As noted by numerous PPD employees, Borg retaliated against Chief Moyle with repeated defamatory statements to severely harm Chief Moyle's reputation within the PPD, before and after Borg terminated his employment.   Borg's retaliatory statements continue to harm Chief Moyle's reputation with potential employers and the law enforcement community.

79. Borg subjected Plaintiff to increased scrutiny, improper discipline, disparagement, and ultimately termination in retaliation for Chief Moyle engaging in protected speech regarding PPD operations, effectively serving and protecting the citizens of Princeton. Additional examples of retaliation against Chief Moyle for engaging in protected speech include:

80. In September of 2021, after Chief Moyle discussed improper handling of internal affairs investigations, conflicts of interest, and hostile work environment complaints within Princeton City Hall with Borg and Human Resources, Chief Moyle was

subjected to retaliation in the form of insulting email messages, verbal hostility, and instructions to falsify discipline records.

81. After Chief Moyle spoke to Borg about current Princeton Police Chief, Waters's lack of qualifications and significant pay disparities within the PPD that needed to be corrected, Chief Moyle was subjected to critical emails and false accusations regarding PPD time sheets on October 5, 2021.

82. When Chief Moyle went to Borg's office to discuss violations of the City ordinance prohibiting consumption of alcohol in public parks, Borg criticized Chief Moyle to Mayor Chacón, and refused to allow Chief Moyle to enforce the ordinance stating that the gathering involved friends of the Mayor.

83. In June 2022, after Chief Moyle communicated with Borg about the need for PPD training and additional staffing, Moyle was retaliated against with false accusation of misusing City vehicles, criticism regarding event planning, and scrutiny of staff management.  Chief Moyle was also subjected to stricter leave policies than all other employees when requesting bereavement leave after the death of his sister in August, 2022.

84. After Chief Moyle discussed problems with the security of the PDD building, improper handling of evidence, and Borg's failure to adhere to City purchasing procedures, the retaliation from Borg increased with Chief Moyle being denied overdue pay increases.

85. In July of 2022, Chief Moyle wrote Borg regarding the need to increase PPD salaries up closer to market average and asked for necessary staff compensation information. In September 2022, after Borg ignored him and refused to provide any response, Mayor Chacón instructed Chief Moyle to write to her about the issue directly.

86. Borg retaliated by refusing to increase Chief Moyle's compensation in line with other employee pay raises and put Chief Moyle on a fabricated performance improvement plan in an attempt to force Chief Moyle out of the PPD.

87. After a meeting between Chief Moyle, Borg, and Chacón.  Borg wrote a false and defamatory post-meeting letter that was riddled with false statements and mischaracterization regarding Chief Moyle.

88. Borg informed Chief Moyle that Defendants were putting Chief Moyle on administrative leave and offered him $9,000 in compensation if Plaintiff would quietly resign and sign a complete release of claims.

89. Borg told Chief Moyle that if he refused to resign and go away quietly, Borg would fire the Chief of Police, ruin his 32-year career in law enforcement and destroy his reputation with a Dishonorable Discharge.  Borg retaliated against Chief Moyle and followed through with  malicious threat.

90. After Borg terminated Chief Moyle, Borg called a mandatory meeting attended by Chacón, Borg, City Council Members, PPD officers and other Princeton employees. During the meeting, Chacón and Borg further defamed Chief Moyle with numerous false accusations, intentionally dishonest statements, and personal and professional attacks against Plaintiff.

91. The temporal proximity between Chief Moyle's protected speech and Defendants' retaliatory adverse employment actions against him support a finding that Chief Moyle's statements on matters of public concern were motivating factors for the adverse employment actions.

***Count 2: Violation of Texas Government Code §§ 614, Subchapter B***

*(Declaratory Judgment)*

92. Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

93. Defendants failed to abide by Texas Government Code Chapter 614, Subchapter B.

94. Pursuant to section 37.009 of the Civil Practices and Remedies Code, Chief Moyle requests the Court to construe Texas Local Government Code § 614.023 and declare that Defendants violated said law by failing to comply with the statutory provisions of Chapter 614 (of the Texas Local Government Code), Subchapter B.

95. Chief Moyle further requests the Court to construe Texas Local Government Code § 614.023 and declare that Defendants violated said law by not conducting an investigation into the complaints, not establishing evidence to prove the allegation(s) of misconduct, failing to provide Chief Moyle with the signed written complaints giving clear allegation, and declare that such disciplinary action in giving the Plaintiff an ultimatum was an adverse employment action.

96. Texas Government Code §§ 614.022 and 614.023 require that a complaint against an officer to be used for a disciplinary action must be (1) in writing, (2) signed by complainant, and (3) presented to the officer, before it can be used as the basis for a disciplinary action against the officer.  The officer may not be indefinitely suspended or terminated from employment based on the subject matter of the complaint unless (1) the complaint is investigated and (2) there is evidence to prove the allegation of misconduct.

97. Defendants did not satisfy Chapter 614.  The fabricated complaint was not investigated and there was no evidence to prove the allegation of misconduct.  As described above, Borg's "investigation" was a self-serving charade with a predetermined result.

98. Borg unilaterally made the complaint and the determination to terminate Chief Moyle. No legitimate investigation was conducted.  Borg enacted a sham investigation with the predetermined result that Borg dictated.   Chief Moyle's response was not considered, the underlying facts were not identified, the merits were not assessed, and evidence did not exist to prove misconduct.

### *Count 3: Violation of  rocedural Due  rocess*

99. Defendants Derek Borg and Brianna Chacón.

100.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

101.    Defendants deprived Chief Moyle of his procedural due process rights protected under 42 U.S.C. § 1983 by conducting a fraudulent procedure, with a predetermined result, to terminate Chief Moyle's employment arbitrarily and capriciously.

102.    A claim for violation of due process in the context of public employment entails (1) a property right/interest in employment, and (2) arbitrary or capricious termination of that interest.  *Babin v. Breau* , 587 Fed. Appx. 105, 112 (5th Cir. 2014).

103.    The elements of a procedural due process claim are 1) deprivation of a property interest protected by the 14th Amendment, and 2) the process attendant to the deprivation was constitutionally deficient.   *y. Dep't lf Corr. V. Thompson*, 490 U.S. 454,460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989); *Wilson v. Birnberg*, 667 F.3d 591, 601 (5th Cir. 2012).

104.    Chief Moyle had a clearly established property interest in continued employment that is recognized in the 5th Circuit. *Stem v. Gome*  , 813 F.3d 205, 210 (5th Cir.2016) (quoting *Evans v. City of Dallas* , 861 F.2d 846, 848 (5th Cir.1988) ).  "Federal constitutional law determines what process is due."  *lingler v. niv. of S. Mississippi* , 612 Fed. Appx. 222, 229 (5th Cir.2015) (citing *Loudermill* , 470 U.S. at 542, 105 S.Ct. 1487 ).

105.    The arbitrary and capricious procedures failed to comply with the provisions outlined in Texas Local Government Code § 614.022 and 614.023.  Steps were not taken to establish the required facts to prove the allegation(s) of misconduct.  The procedures were nothing more than Borg wrongfully terminating Chief Moyle and removing him from his position with PPD.  Chacón had personal involvement, participated, had actual knowledge and acquiesced to the due process violations.

106.    Among other things, Chief Moyle was entitled to a meaningful opportunity to be heard before a tribunal that possesses "expertise and an apparent impartiality toward the charges." *Wells v. Dallas Indep. Sch. Dist.* , 793 F.2d 679, 682 (5th Cir.1986) (citing *Levitt v. niv. of Te as at El Paso* , 759 F.2d 1224, 1228 (5th Cir.1985) ).

107.    There was no impartial review of the conclusory allegations asserted by Borg against Chief Moyle.  Borg enacted this fraudulent, sham procedure, and Chief Moyle's response was never considered.  The required underlying facts were not identified, the merits were not impartially assessed, and evidence did not exist to prove misconduct.  Chief Moyle's rights to due process, including an investigation of the complaint against him that established the necessary evidence proving the allegation(s) were violated.

108.    Defendants conduct was motivated by evil motive and involved reckless indifference to Chief Moyle's federally protected rights.

### *Count 4: Violation of Substantive Due   rocess*

109.    Defendants Derek Borg and Brianna Chacón

110.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

111.    Whereas procedural due process focuses on the procedures that must be followed, substantive due process asks whether there is an adequate reason for the deprivation. ERWIN CHEMERINSKY, CONSTITUTIONAL LAW: PRINCIPLES AND POLICIES 558 (4th ed. 2011).  Stated differently, the substantive component of due process prohibits certain actions regardless of the fairness of the procedures used to implement them.  *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 840, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)  (quoting *Daniels*, 474 U.S. at 337, 106 S.Ct. 662 ); *Marco   utdoor Adv., Inc. v. Regional Transit Auth*. , 489 F.3d 669, 673 n.3 (5th Cir.2007).

112.    The Due Process Clause protects an individual's freedom to work and earn a living in one's community.  *Cabrol v. Town of   oungsville*, 1106 F.3d. 101 (5th Cir. 1997). In order to succeed on a claim for violation of substantive due process "in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Moulton v. City of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993); cf. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) ("We have emphasized time and again that 'the touchstone of due process is protection of the

individual against arbitrary action.'" (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

113.    Defendants deprived Chief Moyle of his substantive due process rights by terminating his employment solely for self-serving and corrupt reasons.  As discussed above, Borg and Chacón arbitrarily fired Chief Moyle to prevent him from further exposing corruption, and advancing the development of the PPD as he was hired to do.

114.    The arbitrary and capricious nature of Chief Moyle's termination is further evidenced by the fact that Defendants Borg and Chacón replaced Chief Moyle with James Waters, the same person he was hired to replace two years earlier because Waters was admittedly unqualified for the position of Princeton Police Chief.

### Count 5:  Stigma- lus-Infringement:

115.    Defendants Derek Borg and Brianna Chacón.

116.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

117.    Even if Plaintiff does not demonstrate a property interest in continued employment, his claims implicate a liberty interest subject to due process protections. *Guerra v. City of Pleasanton*, No. SA-20-CV-00536-XR, 2020 U.S. Dist. Lexis 219994, 2020 WL 6922632, at *6 (W.D. Tex. Nov. 24, 2020).

118.    Discharge from public employment under circumstances that put the employee's reputation, honor, or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment.  *Rosenstein v. Dallas*, 876 F.2d 392, 395 (5th Cir. 1989), *reinstated in relevant part*, 901 F.2d 61 (5th Cir. 1990) (*en banc*).  Damage to an individual's reputation as a result of defamatory statements made by a state actor,

accompanied by an infringement of some other interest is actionable under §1983.  This is known as the "stigma-plus-infringement" test.  *Ristow v. Hansen*, 719 F. App'x 359, 365 (5th Cir. 2018).

119.    As discussed above, Chief Moyle satisfies the elements of the "stigma-plus-infringement" test because (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied [his] request.  *Id.*

120.    Despite Chief Moyle's requests, Defendants refused to provide him with an opportunity to clear his name against the public, false, stigmatizing charges they made in connection with the discharge of his employment.  As a direct result, Chief Moyle has been unable to find employment in law enforcement, despite a previously distinguished three decade career.

### *Count 6: Mandamus - Texas Government Code § 551.144*

121.    Defendant City of Princeton, Texas.

122.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

123.    An offense under Texas Government Code Sec. 551.144, occurs when a member or individual knowingly calls or aids in calling or organizing a closed meeting when the purposes of such a closed meeting are not permitted under the Texas Government Code.

124.    Under Section 551.071 of the Texas Government Code a Closed Session may only be called to consult with an attorney when the governmental body seeks the advice of its attorney about pending or contemplated litigation or to discuss a settlement offer.

125.    The City Council of Princeton, Texas called Closed Session meetings in contravention to the purposes of the Texas Open Meetings Act on several occasions, including the meeting held by City Council on October 13, 2022.

### Count 7: Mandamus - Texas Government Code § 551.102

126.    Defendant City of Princeton, Texas.

127.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

128.    An offense under Texas Government Code Sec. 551.102, occurs when a final action, decision, or vote on a matter deliberated in a closed meeting is made during the closed meeting and not in an open meeting in compliance with the notice provisions of the Texas Government Code.

129.    The City Council of Princeton, Texas called Closed Session meetings in contravention to the purposes of the Texas Open Meetings Act on multiple occasions, including the meeting held by City Council on October 13, 2022.

### Count 8: Mandamus - Texas Government Code § 551.143

130.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

131.    Defendant City of Princeton, Texas.

132.    An offense under Texas Government Code Sec. 551.143, occurs when a member or individual knowingly communicates or engages in communication where at least

one communication among a series of communications that each occur outside of a meeting concerns an issue within the jurisdiction of the governmental body in which the members engaging in the individual communications constitute fewer than a quorum of members but the members engaging in the series of communications constitute a quorum of members.

133.    Borg and Chacón repeatedly engaged in communications concerning Chief Moyle's employment and the sham investigation into his performance of his duties as Chief, including in November, 2022.

### *Count  : Mandamus - Texas Government Code § 551.041*

134.    Defendant City of Princeton, Texas.

135.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

136.    An offense under Texas Government Code Sec. 551.041, occurs when a City fails to properly notice a meeting correctly. A governmental body shall give written notice of the date, hour, place, and subject of each meeting held by the governmental body.

137.    Defendants cited loss of confidence as the reason for Chief Moyle's adverse employment action; but, with no mention of an action item in the agenda for no-confidence or loss of confidence. The City of Princeton had noticed in the past no-confidence in the agenda for public officials undergoing such action items. The city failed to properly notice multiple meetings, including the meeting by City Council held on October 13, 2022.

### *Count 10: Mandamus - Texas Government Code § 551.103 & 551.104*

138.    Defendant City of Princeton, Texas.

139.    Plaintiff incorporates by reference the allegations set forth above as if the same were fully set forth herein.

140.    An offense under Texas Government Code Sec. 551.103, occurs when a City fails to either keep a certified agenda or make a recording of the proceedings of each closed meeting.

141.    An offense under Texas Government Code Sec. 551.104, occurs when a City fails to preserve either a certified agenda or a recording of the proceedings of a closed meeting for two years after the date of such meeting. The city failed to properly preserve a certified agenda or a recording of the proceedings for multiple meetings, including the meeting held by City Council on October 13, 2022.

## VI.

### CONDITIONS PRECEDENT

All conditions precedent to Plaintiff's claims have been performed or have occurred.

## VII.

### ALTERNATIVE PLEADING

Per Texas Rule of Civil Procedure, Rule 48, Plaintiff has pled, and/or reserves the right to plead, causes of action and/or remedies in the alternative. See Tex. R. Civ. P. 48.

## VIII.

### RULE 193.7 NOTICE

Pursuant to Texas Rule of Procedure 193.7, Plaintiff hereby gives notice to all parties that he intends to use all documents produced in response to written discovery in any pretrial hearing and at trial.

## IX.

## RESERVATIONS

Plaintiff reserves the right to bring additional causes of action against Defendant and to amend this Petition as necessary.

## X.

## JURY DEMAND

Plaintiff hereby demands a jury trial on all ultimate fact issues in accordance with Texas law and tenders the appropriate fee.

## XI.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays for the following relief:

a)  That Defendants be cited to appear and answer herein;

b)  Judgment in Plaintiff's favor on all claims asserted;

c)  For appropriate relief regarding the unlawful and unconstitutional acts and practices of Defendants;

d)  Judgment requiring Defendant, the City of Princeton to fully restore Plaintiff to work for the Princeton Police Department as Chief of Police;

e)  Judgement against Defendants in an amount sufficient to compensate Plaintiff for the harms and losses that the violations of law caused, including back pay, compensatory damages, and, if restoration to work is not feasible, front pay;

f)  Damages for mental anguish, pain and suffering;

g)  For appropriate equitable relief against Defendants as allowed by law, including the enjoining and permanent restraining of the violations alleged in this Petition;

h)  An order in mandamus directing Defendant, the City of Princeton, to reinstate Plaintiff.

An order of mandamus is appropriate to remedy the harm suffered by Chief Moyle which can only be remedied by an order in mandamus.

i)  For appropriate equitable relief against Defendants as allowed by law, including the enjoining and permanent restraining of these violations and direction to Defendants to take such affirmative action as is necessary to ensure the effects of the unconstitutional and unlawful conduct of future violations of the Texas Open Meetings Act be eliminated and do not continue to affect Plaintiff and other citizens as defined by the Texas Open Meetings Act;

j)  Actual damages;

k)  Costs of court;

l)  For an award of reasonable attorneys' fees and costs;

m)  Pre-and post-judgment interest at the highest rate allowed by law; and

n)  All such further relief to which Plaintiff may be justly entitled.

### Exemplary Damages

o)  Plaintiff incorporates by reference each and every allegation contained in the paragraphs above as if the same were set forth in full herein.

p)  Defendants' acts complained of herein were committed knowingly, willfully, intentionally, and with actual awareness or actual malice.  In order to punish Defendants for such unconscionable actions and to deter the same in the future, Plaintiff seeks recovery against Defendants for exemplary damages pursuant to TEX. CIV. PRAC. & REM. CODE § 41.003(a).

q)  Defendants have acted with malice and/or reckless indifference to Plaintiff's state protected rights, thereby entitling him to punitive damages under TEX. CIV. PRAC. & REM. CODE § 41.003(a).

Respectfully submitted,

Bosco Bless, PLLC

/s/ *John D. Bosco*
John D. Bosco
Bosco Bless, PLLC
4034 Bishop Lane
Dallas, Texas 75244
Telephone: (214) 997-4434
Facsimile: (214) 237-4474
Email: john@boscobless.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on February 26, 2024, a true and correct copy of the above and foregoing document has been served on the parties and counsel of record as listed below.

Service Email:
Grant Lowry
glowry@boyle-lowry.com
Counsel for Defendant, The City of Princeton, Texas

Derek Borg
DBorg@princetontx.us

Brianna Chacón
BChacon@princetontx.us

Bosco Bless, PLLC

/s/ *John D. Bosco*

Page | 30

John D. Bosco
Bosco Bless, PLLC
4034 Bishop Lane
Dallas, Texas 75244
Telephone: (214) 997-4434
Facsimile: (214) 237-4474
Email: john@boscobless.com

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

John Bosco on behalf of John Bosco
Bar No. 24045533
john@boscobless.com
Envelope ID: 84921774
Filing Code Description: Amended Petition
Filing Description: Plaintiff's Amended Petition
Status as of 2/27/2024 4:25 PM CST

Associated Case Party: Mark Moyle

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| John Bosco | | john@boscobless.com | 2/26/2024 5:16:01 PM | SENT |

Associated Case Party: City of Princeton, Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Randy Montgomery | | Rmontgomery@drmlawyers.com | 2/26/2024 5:16:01 PM | SENT |
| Alyssa Barreneche | | abarreneche@drmlawyers.com | 2/26/2024 5:16:01 PM | SENT |
| Renay Delozier | | rdelozier@drmlawyers.com | 2/26/2024 5:16:01 PM | SENT |
| Jill Koester | | jkoester@drmlawyers.com | 2/26/2024 5:16:01 PM | SENT |
| Grant  Lowry | | glowry@boyle-lowry.com | 2/26/2024 5:16:01 PM | SENT |

Associated Case Party: Matthew Tanner

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Steven Pitzner | | spitzner@kgwlawfirm.com | 2/26/2024 5:16:01 PM | SENT |

Associated Case Party: Derek Borg

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Derek Borg | | DBorg@princetontx.us | 2/26/2024 5:16:01 PM | SENT |

Associated Case Party: Brianna  Chacon

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|